UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE PHILIP JAMES METSCHAN,

    Debtor.

SHAY,

    Creditor-Appellant,

    v.

HOFFMAN,

    Trustee-Appellee.

Case No. 22-cv-05447-VC

**ORDER AFFIRMING THE BANKRUPTCY COURT'S ABSTENTION ORDER**

    Two years ago, Philip Metschan filed a petition for a voluntary Chapter 7 bankruptcy. Timothy Hoffman was appointed as the bankruptcy trustee and several creditors filed timely claims against the bankruptcy estate. Another creditor, Metschan's ex-wife Christina Shay, filed an untimely and unsecured claim with six different parts. In general, a late claim is only paid if there are funds left after paying any timely claims in full. But Shay's claim included a domestic support obligation, which is given priority even if filed late. After the trustee objected to Shay's claim, the bankruptcy court allowed three of its six components, including the priority domestic support obligation (although in a lower amount than Shay had sought). The court then directed the parties to attempt to settle the dispute over the rest of Shay's claim, including about $37,000 in long-term incentive payments and bonuses from Metschan's work at Pixar, about $4,000 in class action proceeds, and about $8,000 in pre-petition attorney's fees.

Settlement talks failed, and the trustee moved for the court to abstain from adjudicating the balance of Shay's claim. He requested that the court instead direct him to commence an interpleader action in state family court to determine whether the estate's remaining funds should go to Shay or to Metschan. Further bankruptcy litigation would have quickly depleted the estate: After fully paying Shay's priority domestic support, the other creditors' timely claims, and the two allowed but non-priority components of Shay's claim (as well as paying the bankruptcy trustee and his counsel), there would be about $24,000 left in the estate. Shay contends she is entitled to about twice that amount, while Metschan believes she is entitled to none of it. The trustee, having examined Shay's claim, also believes she is entitled to little or nothing. Shay expects that litigating the balance of her claim will require further discovery and a multi-day evidentiary hearing, for which the bankruptcy estate would be required to pay the trustee's legal fees. Dkt. Nos. 4 at 32, 5-2 at 654–55 (ER 1354–55). The moment those fees exceeded $24,000, the allowed claims—including the already-allowed parts of Shay's claim—would no longer be paid in full. And, of course, it would then no longer matter whether Shay prevailed on the merits, because there would be no money left to recover.

Given the circumstances, the bankruptcy court granted the motion to abstain. Dkt. No. 5-2 at 671–81 (ER 1371–81). Shay appealed.

I

On appeal from the bankruptcy court, legal questions are reviewed de novo. *Banks v. Gill Distribution Centers, Inc.*, 263 F.3d 862, 867 (9th Cir. 2001). Factual findings are reviewed for clear error, although this appeal doesn't present factual disputes. *Id.* Abstention decisions are reviewed for abuse of discretion. *See In re Eastport Associates*, 935 F.2d 1071, 1075 (9th Cir. 1991).

Permissive abstention in bankruptcy is governed by a twelve-factor test. The factors are: "(1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding

commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties." *In re Tuscon Estates, Inc.*, 912 F.2d 1162, 1167 (9th Cir. 1990).

## II

### A

Shay advances three categories of arguments for reversing the decision of the bankruptcy court. The first is that the bankruptcy court erred in sending the fight over the residual funds to state court. Shay says that a state court lacks jurisdiction to hear the matter because the federal courts are vested with "exclusive jurisdiction" over a bankrupt debtor's property. 28 U.S.C. § 1334(e). But the abstention provision at issue here, section 1334(c)(1), provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding[.]" If "nothing in this section"—that is, section 1334—can be construed to prevent a bankruptcy court from abstaining, then section 1334(e) cannot be a reason to reverse this abstention decision.

There are, of course, plenty of cases about how state courts can't intrude on federal bankruptcy matters. The start of a bankruptcy proceeding triggers an automatic stay of most other litigation involving the debtor. 11 U.S.C. § 362(a). There would indeed be "chaos" if state courts were to adjudicate those stayed matters on their own initiative or at the urging of a debtor or creditor. Dkt. No. 4 at 14. But this line of argument confuses which court took the action challenged here. No state court is intruding on anything; the bankruptcy court is engaged in the orderly distribution of the estate. And the suggestion that it is per se improper for a bankruptcy

court to refer a matter to a state court is belied both by the bankruptcy code's abstention provisions, which explicitly contemplate abstention on matters of state law, and by a bankruptcy court's statutory power to lift the automatic stay. 11 U.S.C. § 362(d), 1334(c)(1)–(2).

Shay additionally argues that the bankruptcy court lacked specific statutory authority for its order. In particular, she believes that depositing the remaining money with a state court clerk is improper because 11 U.S.C. § 726 enumerates the hierarchy of recipients of estate funds, and state court clerks are not listed there. But a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). That language is a grant of "broad equitable power." *Johnson v. Home State Bank*, 501 U.S. 78, 88 (1991). And the bankruptcy court also has "inherent equitable power to fashion relief, so long as the remedy is consistent with the objectives of the Bankruptcy Code." *In re Sasson*, 424 F.3d 864, 874 (9th Cir. 2005). The bankruptcy court did not gift the funds to the state court clerk to take home; either Shay or Metschan will ultimately receive the money. Shay is an allowed creditor and Metschan is the debtor, both categories listed in section 726. The bankruptcy court's order is therefore "appropriate to carry out" distribution under section 726, and it furthers the Bankruptcy Code's objective of fairly and efficiently distributing funds.

**B**

Shay's second set of arguments concerns the bankruptcy court's direction that the trustee "promptly take steps to conclude his administration of this estate." Dkt. No. 5-2 at 681 (ER 1381). Shay believes it was error for the bankruptcy court to kick off this process now because, as a practical matter, she thinks the resolution of the rest of her claim might affect the distribution of funds to other creditors and because, as a formal matter, her claim has not been fully allowed or disallowed.[1]

---

[1] It's not clear that this challenge is ripe. Shay herself describes this aspect of the order as directing the trustee to "prepare a proposed distribution of estate funds[,] . . . obtain approval of the United States Trustee's Office[,] . . . and thereafter obtain a court order approving the distribution." Dkt. No. 4 at 16. That further order of the bankruptcy court would be a more proper order to challenge, not the part of the abstention order that directs the trustee to get the ball rolling. But the trustee does not make this point, so the Court addresses these arguments on

Shay's practical argument turns on her belief that some of the remaining parts of her claim will be entitled to priority. Without priority, even if Shay fully prevails on the merits, her untimely claim would be paid after the other creditors' timely claims. There would be no risk that paying the other creditors now would violate the principal that "[e]ach creditor . . . is entitled to an equitably proportional or pro rata share of property of the estate vis-a-vis similarly situated creditors" for the simple reason that Shay is not "similarly situated" to creditors with timely claims. *In re Comstock Financial Services, Inc.*, 111 B.R. 849, 855 (Bankr. C.D. Cal. 1990). Shay's operative claim does not assert priority beyond the already-allowed domestic support obligation. Dkt. No. 5-1 at 715 (ER 1415). Instead, Shay argued for the first time in her opposition brief before the bankruptcy court that she intends to seek post-petition attorney's fees under a trio of state statutes. Shay believes that those fees would be entitled to priority because they would be (in part) fees incurred litigating the domestic support obligation.[2] The bankruptcy court rejected this theory because no such request for fees was before it, because such fees would be a post-petition debt not payable or dischargeable in a Chapter 7 bankruptcy, and because such fees would not be entitled to priority as a domestic support obligation.

The first ground is sufficient to affirm. The possibility of late-breaking claims, including priority claims, is not a reason to hold open a bankruptcy proceeding. Otherwise no bankruptcy proceeding could ever end, because a creditor can file a priority claim as late as "the date on which the trustee commences final distribution" of estate funds. 11 U.S.C. § 726.

Without an actual request for post-petition fees, it's difficult to say much beyond that. But the California statutes to which Shay points do not necessarily entitle her to fees if she prevails. One provides for fees "in the nature of a sanction" against the other party. Cal. Fam. Code § 271. Another allows a court to arrange for payment of fees from the outset of a

---

the merits.
[2] In passing, Shay also suggests that the already-allowed domestic support portion of her claim won't be paid while the rest of the claim is litigated in state court. Dkt. No. 4 at 18. She cites no authority for this proposition, and it's difficult to imagine the trustee taking such a position in his proposed distribution—let alone the bankruptcy court approving it.

proceeding after making certain findings regarding the parties' relative financial situations and concluding that such fees are "appropriate" to "ensure that each party has access to legal representation." Cal. Fam. Code § 2030. The final provision provides for an award of fees if there is "a disparity in access to funds" and "one party is able to pay for legal representation for both parties"—but only if "appropriate" and "absent good cause to the contrary." Cal. Fam. Code § 3557. An award of fees under any of these statutes would be fact-intensive and discretionary. That means that even were a court to award fees to Shay, they would probably not count as being "owed" or "recoverable" as of the date of filing the petition—and therefore would probably not be entitled to priority as a domestic support obligation. 11 U.S.C. § 507.

But in any case, it is not a threshold requirement for abstention that there be *no* possibility of abstention harming the interests of a creditor. The statutory language permits abstention "in the interest of justice, or in the interest of comity with State courts or respect for State law," and the Ninth Circuit has adopted a set of twelve factors that should inform the decision. 28 U.S.C. § 1334(c)(1); *Tuscon Estates*, 912 F.2d at 1166–67. Those factors can surely accommodate consideration of whether a creditor might be disadvantaged by abstention. But a court need not conclude beyond a doubt that abstention would be harmless. In this case, there is no more than a remote possibility that Shay would move for post-petition fees, that those fees would be awarded, and that they would be both allowed and entitled to priority. Furthermore, if the fees *were* entitled to priority as a domestic support obligation, then they would not be dischargeable in bankruptcy anyway, lessening any prejudice to Shay. 11 U.S.C. § 523(a)(5).

Shay's more formal argument about the propriety of starting to conclude the bankruptcy is that the state family court may "liquidate" the balance of her claim but may not "allow" it. That is, a state court may adjudicate liability and fix the amount owed, but the prevailing party must then return to the bankruptcy court before collecting on the judgment. This distinction lies in the "unsettled and potentially hazardous waters of bankruptcy jurisdiction." *In re Comstock*, 111 B.R. at 854. To be sure, it is possible for a bankruptcy court to abstain from a matter only until judgment is entered elsewhere, and then require the parties to return for further proceedings.

6

*See Tuscon Estates*, 912 F.2d at 1167. That may well be the most common course. And it is true that the bankruptcy court cannot delegate to a state family court the questions whether Shay's claim should be allowed in bankruptcy or whether it is entitled to priority under the Bankruptcy Code. But the bankruptcy court did no such thing here. It instead stated that the funds sent to state court "will remain available to pay whatever that court finds Ms. Shay is owed, if anything." Dkt. No. 5-2 at 681 (ER 1381). If Shay prevails in state court, she can collect the money held by the state court, subject only to the automatic stay. Neither party has asked this Court to decide whether the bankruptcy court's order already lifted the automatic stay. Even if it didn't, that stay will lift upon the conclusion of the bankruptcy. 11 U.S.C. § 362(c)(2).

## C

Shay's remaining arguments are also unpersuasive. She asserts it was an abuse of discretion to abstain without a parallel proceeding in state court. For permissive abstention under section 1334(c)(1), no statutory text suggests such a proceeding is required (unlike mandatory abstention under (c)(2), which requires a "commenced" state action). It is true that in bankruptcy cases the Ninth Circuit has twice said that "[a]bstention can exist only where there is a parallel proceeding in state court." *Security Farms v. International Brotherhood of Teamsters*, 124 F.3d 999, 1009 (9th Cir. 1997); *In re Lazar*, 237 F.3d 967, 981 (9th Cir. 2001). But the latter case clarified that this principle only applies when the action has been removed from state court, therefore requiring the court to construe a motion to abstain as a motion for remand, which the Circuit lacks jurisdiction to review on appeal. *Id.* at 982 n.17. The present action was not removed, so that authority does not control.

Shay also contends that the bankruptcy court erred in its application of the twelve *Tuscon Estates* factors, either by failing to analyze all twelve or by balancing them improperly. The bankruptcy court did analyze all twelve, explaining its reasoning regarding five and then stating that "[n]one of the remaining . . . factors weigh strongly one way or the other." Dkt. No. 5-2 at 680 (ER 1380). As for how the bankruptcy court analyzed and weighed the factors, the applicable standard of review is abuse of discretion. *Eastport Associates*, 935 F.2d at 1076. Far

from leaving this Court with a "definite and firm conviction that the court below committed a clear error of judgment," *In re Nunez*, 196 B.R. 150, 155 (B.A.P. 9th Cir. 1996), a review of the record and order shows that the bankruptcy court identified the most relevant factors, analyzed them appropriately, and came to a reasonable conclusion.

Shay argues that the abstention decision should be reviewed de novo, rather than under an abuse of discretion standard, framing it as a mixed question of law and fact with undisputed facts. It's hard to see how that could be right. The abuse of discretion standard defers to the bankruptcy court's view of what to make of the facts, and how to weigh them against each other, even if everyone agrees on what those facts are. But even if that were the appropriate standard, this Court would rule the same way. Abstention will facilitate the efficient administration of the estate by not consuming the remaining funds litigating an untimely, non-priority claim. The key disputed issues are state law issues, not bankruptcy ones, because Shay's entitlement turns on the meaning of a state divorce decree and the facts of what Metschan has paid her already. The state law issues are not terribly complex, but they are the bread and butter of family court work—not bankruptcy court work. There is not an open, ongoing proceeding in state court, but an interpleader action will be commenced by the trustee, so that factor does not merit great weight. There is no jurisdictional basis to hear this dispute in federal court other than 28 U.S.C. § 1334, favoring abstention. This dispute is a core bankruptcy proceeding in form—but the substance is state family law. It is feasible to separate the dispute from the rest of the bankruptcy proceeding by sending it to state court. The burden on the bankruptcy court's docket may be low, but this is of little significance because the more important issue is the effect on the estate. There is no evidence of forum shopping, but there is also no right to a jury trial; both factors are neutral. Finally, there are not non-debtor parties in the proceeding, which somewhat favors declining to abstain—but only somewhat. Taken together, there are a few very good reasons to abstain, a few weak factors cutting both ways, and some truly neutral factors. This Court, like the bankruptcy court, would abstain.

Finally, Shay argues that it was improper to abstain from ruling on half of her claim after

ruling on the other half. She cites no authority suggesting that was an abuse of discretion or an error, and instead contends that the trustee waived (or rather, forfeited) any abstention argument when he objected to her claim. But it would have been futile for the trustee to file a motion to abstain while Shay's priority domestic support obligation was pending, because that portion of her claim obviously needed to be adjudicated by the bankruptcy court. When circumstances changed, the trustee promptly moved for the bankruptcy court to abstain. He did not forfeit the abstention argument by waiting until it was appropriate to raise.

### III

Faced with an unusual set of circumstances, the bankruptcy court chose a fair and efficient path forward. It did not commit legal error or abuse its discretion. The abstention order is affirmed.

**IT IS SO ORDERED.**

Dated: May 24, 2023

_____
VINCE CHHABRIA
United States District Judge